**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| MARCELLA J. WARD<br>Plaintiff,<br>v.<br>HOMEOWNER SOLUTION PROS INC.<br>Defendant. | Case No. |

# CLASS ACTION COMPLAINT

Plaintiff Marcella J. Ward ("Plaintiff") brings this action on behalf of herself and behalf of all others similarly situated (the putative "Classes"), and makes the following allegations based on her personal knowledge, observations and upon information and belief based on investigation of counsel.

## INTRODUCTION

1. Plaintiff individually and as class representative for all others similarly situated, bring this action against Defendant Homeowner Solution Pros Inc. ("Defendant") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and its enabling statutes, 47 C.F.R. §§ 64.1200(c) and (d).

2. To promote its goods and services, Defendant routinely engages in text messaging campaigns and continues to text message consumers even after they have opted out of Defendant's solicitations. Defendant also engages in telemarketing without the required policies and procedures, and training of its personnel engaged in telemarketing.

3. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone

records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). Private suits can seek either monetary or injunctive relief. *Id.* This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff and the Class members. Plaintiff also seeks statutory damages on behalf of herself and members of the Classes, as well as any other available legal or equitable remedies

## PARTIES

6. Plaintiff is an individual.

7. Defendant is a Michigan corporation headquartered in Grand Rapids, Kent County, Michigan which is located within this District.

## JURISDICTION AND VENUE

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. The Court has general personal jurisdiction and venue is proper over the Defendant because it is headquartered and has its principal place of business in Michigan.

## FACTUAL ALLEGATIONS

10. Defendant is a home improvement contracting business.

11. In order to generate clients for its business, Defendant relies on illegal telemarketing calls and text messages, such as the ones placed to Plaintiff.

12. Plaintiff's cellular telephone number, (725) XXX-XXXX, is a residential number.

13. Plaintiff is the regular and sole user of this number and has been for at least six years.

14. Plaintiff uses her cellular telephone number for personal use only as one would use a landline number in a home.

15. Plaintiff uses her cellular telephone number primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes.

16. Plaintiff does not have any other telephone number.

17. Plaintiff pays for her cellular phone plan and is not reimbursed by a business.

18. Plaintiff has never had her cellular phone associated with any business.

19. Plaintiff has never used her cellular telephone in any business or marketing materials.

20. Plaintiff's cellular telephone number has been registered with the National Do Not Call Registry since November 7, 2023.

21. Despite this, Defendant sent, or caused to be sent, at least seven text messages to Plaintiff's cellular telephone number from October 1, 2024 to December 13, 2024.

22. After the first three text messages were sent to Plaintiff, Plaintiff requested that Defendant stop text messaging her on October 7, 2024 by stating "STOP."

23. Defendant replied to her "STOP" message indicating she would not be contacted again, however, her request was ignored, and Defendant texted her again on October 10, 2024.

24. This pattern continued three more times, until Defendant finally honored Plaintiff's final STOP request.

25. Below are screenshots of the messages:


10:27
5G
36
33959
Text Message • SMS
Tue, Oct 1 at 10:02 AM
Your Home Warranty coverage may have changed - Get your complimentary quote here>> warrnts.homeownersolutionpros.-com
Reply Stop to OPTOUT
Fri, Oct 4 at 11:59 AM
You're eligible for exclusive deals on repairs, renovations & other Home Services. Accept Now>> ppros.homeownersolutionpros.com
Reply Stop to OPTOUT
Mon, Oct 7 at 9:36 AM
Your Home Energy Assessment is Finished. enhance your home with No Initial Cost to you> nsolar.homeownersolutionpros.com
Reply Stop to OPTOUT
Stop
You have opted out of Homeowner Solution Pro Alerts and will no longer receive messages. Reply HELP for help.
Thu, Oct 10 at 10:05 AM
Final Alert: Your Home Warranty
Text Message • SMS


10:28
5G
36
33959
You have opted out of Homeowner Solution Pro Alerts and will no longer receive messages. Reply HELP for help.
Thu, Oct 10 at 10:05 AM
Final Alert: Your Home Warranty coverage may have been modified - See your No Cost quote here>> warrnts.homeownersolutionpros.-com
Reply Stop to OPTOUT
Stop
You have opted out of Homeowner Solution Pro Alerts and will no longer receive messages. Reply HELP for help.
Thu, Oct 17 at 10:37 AM
Urgent: Your Home Warranty rate may have been modified - Get your complimentary quote here>> warrnts.homeownersolutionpros.-com
Reply Stop to OPTOUT
Stop
You have opted out of Homeowner Solution Pro Alerts and will no longer
Text Message • SMS


10:28
5G
36
33959
help.
Thu, Oct 17 at 10:37 AM
Urgent: Your Home Warranty rate may have been modified - Get your complimentary quote here>> warrnts.homeownersolutionpros.-com
Reply Stop to OPTOUT
Stop
You have opted out of Homeowner Solution Pro Alerts and will no longer receive messages. Reply HELP for help.
Mon, Oct 21 at 10:52 AM
Urgent: Your Home Energy Assessment is Finished. Upgrade your home with No Initial Cost to you> solar.homeownersolutionpros.com
Reply Stop to OPTOUT
Stop
You have opted out of Homeowner Solution Pro Alerts and will no longer receive messages. Reply HELP for help.
Fri, Dec 13 at 10:06 AM
Text Message • SMS




26. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services.

27. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to advertise, promote, and/or market Defendant's goods, and/or services.

28. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding, but Defendant continued to text message Plaintiff. Notably, many of the text messages sent by Defendant contained no instructions on how to opt-out, and Plaintiff was left helpless in attempting to stop the solicitations.

29. Defendant sent at least four solicitations after Plaintiff's initial opt-out request.

30. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made opt-out requests and that those requests were never processed; they were ignored by Defendant and its employees and Defendant continued to send text messages.

31. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and Class members. Defendant also has access to text message logs showing Plaintiff's and Class members' inbound opt-out requests.

32. Plaintiff and Class Members revoked any consent they may have previously provided to Defendant by replying with a "STOP" or similar opt-out instruction in response to Defendant's text messages.

33. Defendant's text messages caused Plaintiff and Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

34. Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These

reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

35. Defendant's failure to honor opt-out requests demonstrates that Defendant does not 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and/or (3) maintain a standalone do-not-call list.

36. These failures caused Plaintiff and the Class members harm as they continued to receive text message solicitations after asking for those messages to stop.

37. Defendant's text messages caused Plaintiff and the Class members cognizable harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion. Defendant's text messages also occupied storage space on Plaintiff's and the Class members' telephones. Defendant's text messages also inconvenienced Plaintiff and the Class members and caused disruption to their daily lives.

## CLASS ACTION ALLEGATIONS

38. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

39. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

40. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

41. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the Class members.

**<u>National Do Not Call Registry Class:</u>** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

**<u>Internal Do Not Call Class:</u>** All persons within the United States who, from June 1, 2023 forward who (1) received two or more unsolicited text messages and/or telemarketing call from Defendant and anyone acting on Defendant's behalf, (2) other than a message confirming an opt-out request, (3) within any 12-month period, (3) for the purpose of selling Defendant's products or services, (4) after making a request to Defendant not to receive further text messages, including by texting the word "Stop" or similar opt-out instructions in response to Defendant's text messages.

42. Excluded from the Class are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

43. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

44. This Class Action Complaint seeks injunctive relief and money damages.

45. The Classes as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

46. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

47. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

48. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

49. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

50. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a. Whether Defendant sent text messages to Plaintiff and Class members;

b. Whether Defendant continued to send text messages solicitations after opt-out requests;

c. Whether Defendant failed to honor Plaintiff's and Class members' opt-out requests;

d. Whether Defendant maintains an internal do-not-call list and instructs its employees how to use the list;

e. Whether Defendant maintains the required policies and procedures under section 64.1200;

f. Whether Defendant implemented the requisite training of personnel under section 64.1200;

g. Whether Defendant text messages individuals who had registered their telephone numbers on the National Do Not Call Registry;

h. Whether Defendant's conduct constitutes a violation of the TCPA; and

i. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

51. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

52. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

53. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

54. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

55. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**COUNT I**

**Violation of 47 U.S.C. § 227(c) and 64.1200(c)**
**(Plaintiff and the DNC Class)**

56. Plaintiff re-alleges and incorporate the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

57. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

58. Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

59. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

60. Plaintiff and DNC Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages. *See* 47 C.F.R. § 64.1200(f)(5)(i). (A consumer's "seller-specific do-not-call request * * * terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.")

61. Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

62. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one text message in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

63. As a result of Defendant's conduct as alleged herein, Plaintiff and DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class.

**COUNT II**

**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(Plaintiff and the Internal DNC Class)**

64. Plaintiff re-alleges and incorporate the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

65. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

66. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> *No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:*
>
> *(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.*
>
> *(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.*
>
> *(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be*

> *liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.*

67. Plaintiff and Internal DNC Class Members are residential telephone subscribers who received more than one text message made for purposes of telemarketing or solicitation purposes from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

68. Plaintiff and Internal DNC Class members made requests to Defendant not to receive texts from Defendant.

69. Plaintiff and Internal DNC Class Members revoked any consent they may have previously provided Defendant by replying with a “stop” or similar opt-out instruction in response to Defendant’s text messages.

70. Plaintiff and Internal DNC Class Members terminated any business relationship they may have previously had with Defendant by replying with a “stop” or similar opt-out instruction in response to Defendant’s text messages. See 47 C.F.R. § 64.1200(f)(5)(i). (A consumer's “seller-specific do-not-call request * * * terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.”)

71. Plaintiff and Internal DNC Class Members revoked any consent they may have provided Defendant by responding with “stop” or similar opt-out instructions.

72. Defendant continued to text message Plaintiff and Internal DNC Class Members to harass them by marketing their goods and services.

73. Defendant failed to honor Plaintiff and Internal DNC Class members' opt-out requests.

74. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

75. Plaintiff's and Internal DNC Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages.

76. Plaintiff and Internal DNC Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

77. Plaintiff and Internal DNC Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

78. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

79. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

80. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

81. As a result of Defendant's knowing or willful conduct, Plaintiff and Internal DNC Class members are entitled to an award of $1,500.00 in statutory damages per violation.

82.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, pray for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Class as applicable under the TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

e) Such further and other relief as the Court deems necessary.

Dated: August 8, 2025

*s/ Anthony I. Paronich*

Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com